Thank you, Your Honor. May it please the Court, Counsel. My name is Michael Dove, and I represent Terri Running, the appellant in this matter. The Bankruptcy Court and the Bankruptcy Appellate Panel got this case wrong. They got it wrong because they inserted their own words and their own verbiage and interpretation of an unambiguous statute. This Court should reverse the Bankruptcy Court and the Bankruptcy Appellate Panel because the annuity at issue is not, under the express terms of Section 408B of the Internal Revenue Code, a qualified individual retirement annuity. Therefore, it is not and should not be allowed to be claimed as exempt in the underlying bankruptcy matter. The basic facts of this case are not in dispute. The debtor purchased an annuity in April of 2009 for $267,319. If we look at that annuity and the contract itself, it is a single payment and it is a fixed premium annuity. As a result of those qualifications, it does not meet and does not qualify as an individual retirement annuity. Specifically, to be an individual retirement annuity under 408B, and I'm just going to It also says the annual premium on behalf of an individual will not exceed the dollar amount as provided for in another provision of the Internal Revenue Code, which everyone agrees that this case is $6,000. So, Your Honors, what we have here is an individual placing monies $267,319 for one premium. Premiums are not even allowed. They are specifically prohibited under this contract. So, the premium is fixed, notwithstanding the bankruptcy court's interpretation and notwithstanding the bankruptcy panel's insertion of its own language into how it would read. A couple of things that we need to look at from the bankruptcy court's perspective. Not only did Judge Kishel ignore the expressed language of 408B, he took it upon himself to say what the legislature should have done. As Judge Kishel quotes, it's simply irrational to think that somehow Congress would deny the exemptibility of this annuity. Well, unfortunately, you don't get to have that review. Congress writes laws. You're supposed to follow the laws as written when there is no ambiguity. Judge Kishel went on so far as to hold, I'm going to construe, the judge is going to construe 408B of the Internal Revenue Code as allowing qualification of an annuity if it meets an annuity purchased in one lump sum via rollover. There is nothing in the statute, there is no subset or any qualification under 408B that allows this court to make that additional determination that in this specific instance, he's going to determine that it's a qualified individual retirement annuity. There is no basis for that in the language. And then we go on to the BAP. The BAP took a look at Judge Kishel's decision and did various things and then it included some of its own language. They said, well, we don't really think that the statute 408B means what it says. Instead, the BAP admits that they added additional language that if there are annual payments, then the annual premiums cannot exceed the dollar amount as set forth in 219 of the Internal Revenue Code. So in both instances, in the fixed premium case, Judge Kishel just threw it away, said, I don't care what it says, this is what I'm going to do. He called it an absurd result. Well, unfortunately, sometimes Congress doesn't act and sometimes their decisions can be absurd. Is it really a premium when you're paying for the annuity with the rollover dollars? Yes, it is, Your Honor. And I think there was a recent case in March of 2014. Can we just step back and maybe try to apply just some common sense maybe? Sure. I mean, I think Congress is trying to protect IRA funds from being subject to being taken in bankruptcy, right? To a certain degree, if they meet the qualifications. So if you own stocks and bonds in your IRA, that is not subject to being used as an asset in the bankruptcy, right? Generally, yes. Okay, so why isn't this just a different investment vehicle? Rather than buying stocks and bonds, I'm buying an annuity. Your Honor, because the code doesn't allow for that. If you take money out of your IRA and it's undisputed, and Judge Kishel held, that that money was severed from that individual retirement account. So now it's sitting in limbo for up to 60 days for you to reinvest that money. You aren't required to. You could purchase a lake lot. So under that analysis, if you purchase a lake lot, why isn't that lake lot exempt? Because it was originally exempt monies from an individual retirement account. Yeah, but if you buy a lake lot, it's not rollover. It's not still part of the IRA, right? Correct. You'd have to pay taxes on it and all that sort of thing. Yes, but Your Honor, I think in order for it to be a rollover, the first has to be an individual retirement annuity that qualifies to receive the rollover funds. If we look at Section 408D.3 of the code, it says that it's not, it doesn't apply for funds paid out. The entire amount is paid into. It doesn't say into an individual retirement annuity. The first criteria that this Court must address, which neither the Bankruptcy Court nor the Bankruptcy Appellate Panel does, is does it meet the requirements of an individual retirement annuity? And in this case, it doesn't because of the issues that we've said. And the language for the rollover under 408D says it has to be paid into. Well, how can you pay something into something unless it's already established? It doesn't say that you get to roll the money over to create a new vehicle, whether it's a qualified individual retirement annuity or a qualified individual retirement account. It doesn't say that it gets to create it or is established in it. It says to be paid into. I think the purpose of this statute is if you had two or three different IRA accounts sitting up there and you wanted to combine them, you could roll them into one without any tax consequences. That didn't happen here. There was no individual retirement annuity created prior for this rollover to occur. If we just assume that it's going to be rolled over, then we're putting the cart before the horse. We're just saying because it was exempt here, it just automatically, and now we're saying because it was exempt at one point, it doesn't really make any difference if the individual retirement annuity itself qualifies. And I don't think that's what the statute says. I think the statute is very clear as to what is required to have a qualified individual retirement annuity. Also, Your Honor, in March of this year, after the submission of our briefs, there was another U.S. bankruptcy court in Georgia, in the Inouye Cherwenka case, that made a similar holding that the single premium contribution, and in this case, again, the excess contribution, $267,000, the Georgia bankruptcy court again held that that did not qualify as an individual retirement annuity. And I think it's important to note here that the debtor made the argument that there was no annual premium. Is that a new case that you didn't cite in your briefs? Yes, Your Honor. That was issued here in March of 2014. Our briefs were submitted. You may want to submit a 28-J so we have that. I will do that. So anyway, this court, as to your question, Your Honor, was, well, was it really a premium? The court, the bankruptcy court here in Inouye Cherwenka said it better yet. It says, the terms of the annuity cannot obviate the qualifying requirements under Section 408 of the Internal Revenue Code. If it's a horse, it's a horse. In this instance, Your Honor, it was a single fixed premium. Now, if we go back and we look at the flexible issues that were talked about through the amicus and also through the responsive brief, this... What do you make of the fact that it uses the plural, the premiums are not fixed? Does that maybe perhaps suggest that a single premium could be fixed? Your Honor, I think there's two points there. It says the premiums are not fixed, and then right below it says the annual premium. Okay? I believe the intent of this was, you know, we're not going to fix a premium so if your wages go up or down, you're not required to put in X amount of money. And some of the legislative history and some of the reports that were submitted and other things show that. But it shows that there's flexibility. This case, this annuity prohibits you. You could not make another contribution or any premium hereafter. That clearly isn't the intent of 40AB where it references the annual premium. That is intended. This type of an account is intended so you can put money into it on an annual basis. Is it required? That question's unknown. But by prohibiting it, like it is in this annuity, you don't even have that option. And that is what takes it so far askew from being qualified as an individual retirement annuity in this matter. The cases also support, and we went through the cases in our brief, but there have been various cases, one BAP where there has been a single premium and they say, hey, it doesn't qualify. It just doesn't qualify because it is a single premium. That's the N. Ray Simpson case. There's also N. Ray Michael, N. Ray Bogue. And there's also some cases, N. Ray Ludwig. Do any of those cases involve rollover money? None of those cases involve money that originally came from an IRA. And the reason I say it that way, Your Honor, is that I only think you can roll it over if you roll it over into a qualified individual retirement annuity. Prior to that, you're rolling it over, but you don't get to have the tax benefit of having it rolled over because it's not a qualified annuity in which you can roll it. I mean, the only one, I think, correct me if I'm wrong, the only one that involved rollovers, rollover money, was LeClaire. And that went against you, right? That's correct, Your Honor, in LeClaire. But I think the court needs to take careful reading of that. On page 1, the court held it appears that the annuity qualifies. And their second sentence there says, just because the annuity may be characterized, it's dicta, Your Honor. They're saying whether or not it is characterized or may be characterized and qualify under the Internal Revenue Code here, under the Massachusetts law, they just disregarded it. So I don't believe that is binding upon the fact that it is a rollover money. But you are correct. That is the only case that has to actually deal with some monies that at some point were qualified in some other fashion. If there's no further questions, I'm going to reserve the rest of my time for rebuttal. Okay. Thank you. Mr. Allen. May it please the Court. Good morning, Your Honors. Counsel. When I was sitting down trying to come up with how I was going to present my oral arguments today, I, of course, went back and read the briefs. And I, of course, went back and read the statutes. And I, of course, went back and traced where we came to this point. And one of the things that occurred to me is that when these issues were first brought to my attention by Mr. Dove and the trustee, I looked at it and said, this is really a simple issue. Premiums aren't fixed. It was just a one-time payment. If you're going to buy an annuity and it's going to have a set amount being paid out, it has to be a set number. You can't contract with an insurance company if it's not. Congress knows that. People over there, we presume, are pretty intelligent and know these things. And so when I looked at all this, I couldn't see the issue. As I got more and more involved in the case and working through it, I understand the trustee's arguments. I got more involved in the data minutiae, and I will address that in a moment. But when I reflected, this is really a simple case. This is not a fixed premium. It's just the amount that the debtor chose to pay in to buy this annuity. And therefore, the trustee's arguments all fail being traced from that. The debtor, Mr. Miller, my client, was 63 years old at the time that this transaction occurred in 2009. He had a qualified IRA that, as best as we can tell, came from ordinary and proper contributions over the years. At that time, as Judge Kishel cited in his decision, the market was pretty volatile. These IRAs were going up and down. Anyone who had a retirement fund, anyone who had anything, knew that they were dropping. And as Judge Kishel commented in his decision, it made prudent sense at that time, when you're looking at retirement and facing retirement, to put money into an annuity to guarantee your rate of return so you're not subject to market volatility. That's what Mr. Miller did. There was no, he went to the debtors for 60 days to decide. The paperwork in this case, all stipulated to in the record, shows that the money went direct from the IRA to the insurance company to buy the annuity, never passed through Mr. Miller's hand, no question at all about that. Would you say this is a pretty unique factual circumstance? I would say in bankruptcy it appears to be a unique factual circumstance because I did another update last night before, of course, today's hearing to see if there had been any cases decided. And basically, the only cases involving a rollover was the case that was discussed in Appellant's argument, the LeClerc case. Other than this case coming up in citation, there's no cases dealing with a rollover. And I think it's unique in the bankruptcy context because, and this is not in the record, but my experience representing debtors is they usually spend down their IRAs to stave off bankruptcy. So we usually don't have cases involving these numbers that make it worthwhile pursuing. I think also what's going on with the appellate record here is something that I learned early in my practice. I was told by my boss to go research an issue, and I was embarrassed because I came back and I had no case authority. I couldn't find anything, and he just laughed and he said, sometimes the most simple questions have no authority. I bet you can't find a case that if you drop a rock it falls down or that the sky is blue. And I think that's what we have here. I think, and that's why I started out saying taking a step back is extremely helpful here. Because when we take a step back and look at this, it, of course, doesn't fit the statute. It wasn't contemplated. It doesn't fit. I think Judge Gruner's question earlier about the plural of the premiums gets into what I'm going to comment on in a minute in my argument. But to respond to Judge Murphy's question, I don't think this is a unique case outside of bankruptcy as the amicus brief points out. And as the IRS regulations cited in all the briefs point out, this appears to be a common occurrence. The IRS has no problems with it. The IRS has commented on it in the proposed regulations. And I think a lot of people throughout the country do this in a non-bankruptcy context. Of course, we're in a bankruptcy context here. So I think in bankruptcy it's unique, but I suspect just from a planning standpoint it's not unique at all. It's just never been challenged. And for a number of good reasons. For one, the IRS appears to be promulgating regulations authorizing it. So let's get into a little bit of the argument and the minutia. And we go back through the congressional intent here. And if one looks at this type of arrangement, it seems pretty clear reading the history, looking at the IRS regulations, looking at the context and taking a step back, that this language is to address a specific problem. And the problem both Congress was looking at and the way that this should be interpreted in the context and the problem the IRS wants to address is that not everybody contributes to these annuities through a rollover. Many people contributed to normal IRA contributions. Those IRA contributions are subject to statutory limits. Those are cited in the briefs. What they wanted to set up a situation where a taxpayer couldn't do one of these if the taxpayer was contractually obligated to make future premium payments that possibly could exceed the contribution limits. That's what the IRS says. That's what the history appears to indicate. And all of that has to do with contributions from non-qualified monies going in under the employment and contribution limits. Here it's a rollover. The cases all cited by the trustee where these rollovers are not allowed, I'm sorry, where it's a non-exempt case, are all not rollovers. And there's one thread that seems to go through all those cases that is in common that really doesn't apply here. And that thread appears to be a detour converting non-exempt assets to exempt assets shortly before filing bankruptcy or within a reasonable time and trying to shield it under a shield of fitting in this category. And the courts have not allowed that. Here, this isn't one of those cases. If my client had left everything, and we've all stipulated to this, if my client had never bought the annuity in 2009, we wouldn't be here. If he'd put it in any other type of vehicle, the example used by Judge Gruner, if he bought a lake cabin with it, we wouldn't be here. He put it in this vehicle based on relying upon IRS-proposed regulations, representations you can see in the documents that are part of the record from the insurance company, and everybody that this is the way you're supposed to do it, as a good, solid investment. It simply doesn't fit the language of the statute or the intent. The trustee argues plain language, but the language isn't so plain. I mean, when you look at it, is this a premium? I don't think so. It's just what the annuity cost. If two weeks later he wanted to buy another annuity, he could go in and buy another annuity. He would have to make the contribution limitations, but it would make no sense when he's already 63 when he did this. He's 68 now when he's in retirement because all of this he has to take out within a certain period of time anyways. So your argument is that 408 deals with a situation where somebody is, on an ongoing basis, using their yearly exempt amount to buy an annuity. That is absolutely 100% correct. So what should we be looking at this situation under, I would assume you're going to say the provisions that determine whether it is a qualified rollover. Well, that's part of it, yes. And the other part is just that this language doesn't apply because the premiums are not fixed. He bought an annuity, purchased it. We can argue that that's a premium, but it really isn't. It's the purchase price of the annuity. The debtor didn't have a fixed amount he had to put in here. There was no contractual obligation when he negotiated this or worked this out to buy it, like contemplated by Congress here and the IRS regulations and the other items that are cited in the briefs. It wasn't a scenario where he agreed he'd have to pay in a certain amount at fixed intervals or a fixed amount to get what he was going to get. It was simply, if I take this money and put it in, how much am I going to get back? It had to be a set dollar amount mathematically to calculate that number, and that's what he did. He could put in, he was free to put in whatever he wanted, and he did. He put in the whole amount of his IRA and put it all in there. And so, you know, I just don't think it fits in there. And, of course, if a statute isn't, you know, and we cite the Supreme Court decision, this Court is very well aware of all of the authority, if a statute has an ambiguity or a statute is unclear or it doesn't seem to apply, if it results in an absolutely absurd amount, you know, the courts and everybody has to interpret it in a way that makes sense under the statutory scheme. Here, to interpret these individual retirement annuities as no longer being tax qualified under these facts would create an absurd result. Nobody here is looking at a situation where every one of these annuities all of a sudden becomes non-qualified. If it didn't qualify, he'd have to pay taxes on it, wouldn't he? And so would every single person in the country that did one of these investments over the last whatever number of years since this statute was enacted. Not only taxes, but potentially penalty and other ramifications. And I assume the IRS hasn't come after him for taxes or anything. No. No, they haven't. In fact, their regulations, as cited in the amicus brief, their proposed treasury regulations specifically authorize this type of transaction if one takes a look through it. So I don't think there's a chance of them coming after anybody for this. So just to finish up, because I'm at the end here, the trustees in our argument ignores a number of items that are extremely relevant and extremely important. The case law cited by the trustee all deals with cases that aren't rollovers. This is a rollover situation. It ignores the context of the statute to limit the contributions to the employment limits when it's a non-rollover. It ignores the IRS regulations. It ignores the public policy behind all this and the current way everything is set up. Most importantly, to get back to what I said when I started, it just doesn't feel right. It ignores common sense in the application of the law, in the application of the statute. It's using an obscure definition of a statutory subdivision taken out of context to invalidate a qualified tax vehicle used prominently throughout the country that's apparently endorsed and approved by the IRS that would have terrible ramifications throughout the country, not to mention the ramifications to my client. And so for those reasons, I think both the trial judge, Judge Kishel, and the bankruptcy appellate panel's decisions should be affirmed. Thank you for your time. How much time does Mr. Gov have? Three minutes. Forty-four minutes and seconds, yeah. Thank you, Your Honor. You know, I find it unique. He says it doesn't meet the statutory definition of 408B. Well, then you can't have an individual retirement annuity. Isn't it pretty obvious that 408B is a non-rollover situation and that what we really should be looking at is whether this is a qualified rollover? I mean, otherwise, isn't he right that everyone who did this would have to pay taxes on it as if they had bought a lakefront property? I don't know the answer to that, Your Honor. The issue of whether or not 3,000 people or 30,000 people have used this type of vehicle to do it... I think probably a lot of people have bought annuities with their IRA funds. Well, Your Honor, if that's the case, then there have been, and then Congress needs to change it from what it says. In order to have an individual retirement annuity, the statute is clear. And going back again... Doesn't the statute pretty clearly deal with a non-rollover situation where you're using your current income and using your exempt amounts to buy an annuity on an ongoing basis? Absolutely, Your Honor. It certainly could be construed to be that way. But then the question is, how can you claim it as exempt under the Bankruptcy Code if it doesn't fit into that criteria? By pointing to the rollover provisions. But the rollover provisions... Nobody has pointed to, but... The rollover provisions of 408D specifically say it has to be paid into. Again, you can't create a new vehicle by doing this process. It has to be paid into. Not established, not created. It has to be paid into an individual retirement annuity. That doesn't mean it's exempt. If you look at the BOA case from Wisconsin, they immediately, because it was a single payment, again, and I don't want to use the word rollover, non-previously qualified monies. Because in order for it to be a rollover, you have to roll it over into a qualified provision. It's money sitting out there that he had a choice of what to do. He could roll it into a qualified IRA or a qualified individual retirement annuity. He could take the money and go there. I mean, the term rollover, again, I think is putting the cart before the horse. The question is, or the issue is, under the BOA case, there are annuities out there. Section 72 of the Internal Revenue Code. This is a single payment premium. It's paid up. It doesn't fit the statutory requirement of 408B. And as a result, if it's an annuity under 72, which allows for some tax benefits, that doesn't mean you're allowed to exempt it under the Bankruptcy Code, which references, doesn't reference 72, and we put this in our brief, specifically at page 33 of our brief. That doesn't mean that you don't have some tax benefits and you can roll it over into that point. The point here is, in order for it to be claimed as exempt, it has to fit under 408B, and it doesn't. The other issues as far as, you know, with respect to the regulations, the regulations that were cited by the amicus acknowledge they weren't adopted, okay? And I just draw the Court's attention to the Eighth Circuit case of Ballinger v. Johans, which was a USDA case, but the Court there held, because this proposed regulation did not become a final rule, we decline Ballinger's invitation to treat it as an expression of the agency's interpretation of the statute. I don't believe there is any published regulation out there. There's guidelines. There's the IRS manuals. The tax court has a couple cases where it says, we don't care what the manual says, we have to look at what the law says. That can be our interpretation. But there is no regulation that has actually been adopted. It was proposed, but it was not adopted. And I think that's a key distinguishing factor. Again, in summary, this does not qualify under 408B, and the Court should reverse the Bankruptcy Appellate Panel and the Bankruptcy Court. Thank you. Thank you both for your arguments. We'll go to the last argued case.